IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES KENDALL STEWART, #218 366, )
                                    )
        Plaintiff,                  )
                                    )
        v.                          ) CIVIL ACTION NO. 2:16-CV-767-ALB
                                    )            [WO]
KARLA JONES (WARDEN), *et al.*,     )
                                    )
        Defendants.                 )

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff James Stewart ("Stewart"), an inmate in the custody of the Alabama Department of Corrections, files this *pro se* civil rights action under 42 U.S.C. § 1983. He alleges a freeze placed on his prisoner money on deposit account ("PMOD") violates his Fourteenth Amendment right to due process.  Stewart files suit against Warden Karla Jones, Business Manager Renae Nance, and Account Clerk Laura Morgan.[1] For relief, Stewart requests punitive damages, injunctive relief, court costs, and fees.[2] Doc. 1.

Defendants filed special reports and supporting evidentiary materials addressing Stewart's claims for relief. Docs. 10, 26.  In these filings, Defendants deny they acted in violation of Stewart's constitutional rights. *Id.*  Upon receipt of Defendants' special report, the court issued an order directing Stewart to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Stewart "the court may at any time thereafter and without notice to the parties (1) treat the special report[s] and any supporting evidentiary materials as

---

[1] On Stewart's motion, the court dismissed the complaint against Commissioner Jefferson Dunn. Doc. 23.

[2] For the reasons set forth in the Recommendation, Stewart's request for preliminary injunctive relief (Doc. 1) is due to be denied. *See Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).

motions for summary judgments." Docs. 12, 27. Stewart responded to Defendants Jones' and Morgan's special report, *see* Doc. 22, but his response does not demonstrate there is any genuine issue of material fact. *See* Docs. 12, 27. The court will treat Defendants' reports as motions for summary judgment and resolve these motions in their favor.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Stewart to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits,

relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein,* 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that

alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 Fed. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Stewart fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A. Absolute Immunity

To the extent Stewart sues Defendants in their individual and official capacities, they are entitled to absolute immunity from monetary damages in their official capacity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital*

*v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B. Qualified Immunity

In response to Stewart's allegations, Defendants argue they are entitled to qualified immunity in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The records show Defendants were acting within the course and scope of their discretionary authority when the

incident about which Stewart complains occurred. Stewart must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." See *id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). *See Hope*, 536 U.S. at 736, and *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (a plaintiff bears the burden to show that a constitutional violation occurred to defeat a defendant's assertion of qualified immunity); *see also Celotex*, 477 U.S. at 323-24; Fed. R. Civ. P. 56.

The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

## C.     The Complaint

On December 1, 2014, Stewart received an envelope through the prison mail containing his name, his inmate identification number, his dorm number, and an amount of money to be put on his inmate account. On December 2, 2014, Stewart went to check on his inmate account which reflected a balance of $577.54. Stewart spent the money. Several weeks later, on December 27, 2014, Nance informed Stewart they had deposited another inmate's money in his inmate account and a freeze would be placed on his inmate account because he was responsible for paying the money back. On February 3, 2015, Stewart wrote a request slip to Morgan regarding the freeze on his PMOD account and asked whether they could take only a portion of the money placed in his account each time he received funds from friends or relatives. Morgan denied the request. Stewart states his family did not want to send him any further funds if he could not access the money and he has, therefore, not had any funds since his inmate account was frozen. Stewart claims he was not responsible for the funds being placed in his inmate account and complains he was not afforded a due process hearing in connection with the hold placed on his PMOD account. Doc. 1 at 3–4.

**D.      Denial of Funds – Due Process**

On December 2, 2014, Morgan—who was filling in for the Account Clerk—received an envelope from the mailroom which contained a Veteran's Administration ("VA") benefit check made payable to James Stewart. Morgan looked up the inmate to find his AIS number so the money could be posted to the inmate's account. Per the instructions given to Morgan by Nance, her supervisor, Morgan wrote the AIS number on the check assigned to the inmate she found during her inmate search. At the time, neither Morgan nor Nance realized there were two inmates at Easterling with the name "James Stewart." Morgan deposited the funds in Stewart's PMOD account. On January 2, 2015, another VA check was received at Easterling containing the same information as the previous VA check. Morgan searched the inmate's name at which time she realized there were two inmates named James Stewart at Easterling. Morgan immediately notified Nance and then back checked both inmate accounts to determine which one should be receiving VA benefit checks. On realizing the VA check received on December 2, 2014, had been deposited to the wrong inmate's account, Nance instructed Morgan to reverse the deposit transaction entered on December 2, 2014, and deposit the funds into the correct inmate's account. Nance then summoned Stewart to her office to inform him of the erroneous deposit made to his inmate account. Nance further informed Stewart he had to pay back funds he spent beyond what he had in his inmate account at the time of the erroneous deposit before he could spend any additional money. Upon reimbursing the funds spent from the erroneous deposit, Defendants state Stewart's account will be released for his use. Docs. 10-2, 10-5; Doc. 26-1.

Here, Stewart contends the freeze placed on his PMOD account violates his Fourteenth Amendment right to due process. Stewart's contention, however, fails to implicate the due process protection afforded by the Constitution as neither a negligent deprivation of property nor "an

unauthorized intentional deprivation of property by a state employee constitute[s] a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (Inmate's claim that deputy marshal failed to return ring to inmate, whether due to negligence or an intentional act, provided no basis for relief as neither a negligent loss of property nor an unauthorized intentional deprivation of property constitutes a violation of due process.); *Holloway v. Walker*, 790 F.2d 1170, 1173–74 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where high level state employee intentionally engages in tortious conduct, as long as the state system as a whole provides due process); *see also  Daniels v. Williams,* 474 U.S. 327, 330–31 (1986) (holding negligent acts are insufficient as a basis for liability under § 1983).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for Stewart to seek redress for Defendant's alleged improper hold on his inmate PMOD account.  *See* Ala. Code § 41-9-60, *et seq*.; *Smith v. Governor of Alabama*, 562 F. App'x 806, 817–818 (11th Cir. 2014) (holding that the procedures of Ala. Code § 41-9-60, *et seq*., provide a meaningful post-deprivation remedy through which a state inmate may seek relief for a loss or denial of property).  "Furthermore, the post-deprivation remedies available to the plaintiff under Alabama tort law [are] sufficient to satisfy due process." *Radford v. Mitchem*, et al., Civil Action No.  2:09-CV-02426-KOB-JEO (N.D. Ala. 2011),   Magistrate Judge's Report and Recommendation – Doc. No. 24 at 8, adopted as opinion of the court on  October 24, 2011; *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (holding "*Hudson* made clear that as long as *some* adequate postdeprivation remedy is available, no due process violation has occurred.") (emphasis in original).   In light of the adequate state remedy, Stewart's claim that Defendants have

improperly placed a hold on his inmate account does not implicate his constitutional right to due

process as the post-deprivation remedies available to him under Alabama law are sufficient to

satisfy due process. *Hudson*, 468 U.S. at 534–35.  Defendants are entitled to qualified immunity

on this claim.[3]

### E.        Violation of Agency Regulations

Stewart claims that inadequate staff training resulted in Defendants' failure to comply with

agency regulations regarding the funds improperly placed in his PMOD account in December

2014. Doc. 1 at 2–3. To the extent Stewart alleges Defendants' failure to follow agency regulations

resulted in a violation of his constitutional rights, he is entitled to no relief.

An alleged violation of departmental rules or policies, standing alone, does not infringe

upon an inmate's constitutional rights. That state law or state agencies prescribe certain procedures

does not mean those procedures acquire federal constitutional dimension. *Sandin v. Conner*, 515

U.S. 472, 481–82 (1995) (holding prison regulations are not intended to confer rights or benefits

on inmates but are merely designed to guide correctional officials in the administration of prisons);

*United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (holding mere violations of agency

regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n. 7 (11th

Cir.2004) (noting that "procedural requirements set out in [an administrative] regulation are not

themselves constitutional mandates."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.2003)

---

[3]This court has routinely and consistently applied the holding of *Hudson* to dismiss due process claims
brought by inmates challenging actions of state officials regarding deprivations of their property.
*McClellan v. Alabama*, Civil Action No. 2:11-CV-466-ID, 2011 WL 3423940 (M.D. Ala. 2011); *Flournoy
v. Culver*, et al., Civil Action No. 1:10-CV-104-ID, 2010 WL 916577 (M. D. Ala. 2010); *Dunklin v. Riley*,
et al., Civil Action No. 2:06-CV-1063-MEF, 2009 WL 3624706 (M.D. Ala. 2009); *Malone v. Boyd*, et al.,
Civil Action No. 2:09-CV-217-TMH, 2009 WL 1064903 (M.D. Ala. 2009); *Carter v. Valeska*, et al., Civil
Action No. 1:08-CV-858-TMH, 2008 WL 5245618 (M.D. Ala. 2008); *Salmon v. Turner*, Civil Action No.
1:08-CV-554-TMH, 2008 WL 3286982 (M.D. Ala. 2008); and *Todd v. Jones*, et al., Civil Action No. 3:07-
CV-1021-WKW, 2007 WL 4510340 (M.D. Ala. 2007).

(finding "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations ...."); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996) (finding "failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation."); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527–28 (11th Cir.1987) (finding violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

In light of the foregoing, Stewart's claim that Defendants' violated his constitutional rights by failing to follow prison administrative regulations entitles him to no relief.  Defendants are entitled to qualified immunity on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Plaintiff's motion for preliminary injunction (Doc. 1) be DENIED.

2.  Defendants' motions for summary judgment (Doc. 10, 26) be GRANTED.

3.   This case be DISMISSED with prejudice.

4.  Judgment be ENTERED in favor of Defendants.

It is

ORDERED that **on or before August 8, 2019**, the parties may file an objection. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 25th day of July 2019.

/s/    Charles S. Coody
UNITED STATES MAGISTRATE JUDGE